```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

SATYA BANDHU ARYA          :
                           :   CIVIL ACTION
        Plaintiff,         :   NO. 15-4362
                           :
    v.                     :
                           :
PROVIDENT LIFE AND ACCIDENT:
INSURANCE COMPANY          :
                           :
        Defendant.         :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          September 21, 2018

      Presently before the Court is the motion for summary judgment filed by Defendant, Provident Life and Accident Insurance Company ("Provident"). Plaintiff, Satya Bandhu Arya ("Arya"), alleges that Provident, in bad faith, breached the individual disability income insurance policy ("the Policy") it issued to him by failing to provide him with various increases to his benefits. For the reasons set forth below, the Court will grant Provident's motion.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

      On August 27, 1994, Provident issued Arya the Policy which provided him with benefits in the event that he became disabled. The Policy has an effective date of September 6, 1994.

Three Policy provisions are especially relevant here:

First, the Policy provides for yearly 5% increases in Arya's monthly benefit should he become disabled. These "Update Increases" become automatically effective on the anniversary of the Policy's effective date. See Mot. Ex. 1 at 3 & 8, ECF No. 46-2. Provident originally applied the 5% Update Increases to Arya's benefits on September 6th in the years 1995 through 1999. According to the Policy, the Update Increases "will apply to a Period of Disability which starts after the effective date of the increase. It must qualify as a separate Period of Disability." Id. at 8. In other words, Arya is not entitled to Update Increases that arose while being paid disability benefits. Such increases only apply once a new period of disability begins.

Second, the Policy provides that Arya has the right to request an increase in the maximum cost of living adjustment ("COLA") percentage. Similar to the Update Increases, the Policy states "[y]ou can request [a maximum COLA percentage] increase during any Option Period even if you are disabled, but the increase will apply only to a Period of Disability which starts after the effective date of the increase. It must qualify as a separate Period of Disability." Id. at 17. As a result, any increase to the maximum COLA percentage for which Arya became eligible would only be applied to a new period of disability

2

that began after the eligibility arose. Arya sought an increase to his maximum COLA percentage in 2000. However, Provident did not acknowledge the request until 2009.

Third, the Policy provides a formula for calculating Arya's monthly benefit adjusted for COLA (or "Adjusted Monthly Benefit for Total Disability"). The Adjusted Monthly Benefit for Total Disability is calculated by multiplying Arya's "Monthly Benefit for Total Disability" by the "Benefit Factor." Id. at 15. Arya's Monthly Benefit for Total Disability is listed in the Policy as $4,100.00. Id. at 3. The Benefit Factor is determined by dividing the Consumer Price Index for All Urban Consumers ("CPI-U")[1] applicable for the latest "Index Month" by the CPI-U for the first Index Month.[2] Id. at 15. Thus, the Monthly Benefit for Total Disability is a fixed number while the Benefit Factor will vary based on the relevant years' CPI-U's.

Arya made his first claim for benefits due to major depression in 1998. Provident paid monthly benefits on this claim from June 21, 1998 to November 21, 1999. Arya later made a second claim for benefits based on complications from surgery. Provident paid benefits for this period of disability from

---

[1] The CPI-U is published by the Department of Labor.

[2] The first "Index Month" is the date three months before the start of a period of disability. All subsequent Index Months refer to the anniversary of the first Index Month. Id. at 15.

3

January 24, 2000 to December 2, 2000. After Arya made a third claim for benefits, due to depression, Provident paid benefits from September 20, 2002 to October 20, 2003. In all instances, Provident discontinued Arya's benefits after determining that he could return to work and was, therefore, no longer disabled. During the "gap" periods when Arya was not considered disabled, he paid the Policy premiums and did not receive any benefits.

In 2004, Arya was diagnosed with multiple sclerosis ("MS"). As a result of the diagnosis, Arya made a fourth claim for benefits. On December 1, 2004, Provident determined that Arya was permanently disabled due to MS and began making payments on February 27, 2004.

On March 31, 2006, Arya sent a letter to Provident requesting that his MS-related claim be treated as a single period of disability dating back to 1997, rather than a period separate from his other three periods of disability. Mot. Ex. 5, ECF No. 46-2. After reviewing the records, Provident concluded that all of Arya's periods of disability were related to his MS. As a result, by letter dated June 20, 2006, Provident assented to Arya's request, considered Arya to have had one continuous period of disability due to MS, and retroactively issued benefits starting from 1997. Id. at Ex. 7. Provident, thus, paid benefits for the periods of time during which it had previously

found Arya was not disabled and refunded him the premiums he paid during those periods. Id.

While the additional benefits and refund of premiums were obvious boons to Arya, there were negative consequences to the retroactive onset date as well. Because Arya was now considered to have been continuously disabled under one period of disability since 1997, Provident removed the last two 5% Update Increases that became effective after Arya's new onset date. Similarly, Provident refused to apply the maximum COLA percentage increase that Ayra sought in 2000, but that Provident did not acknowledge until 2009, for the same reason. As discussed above, both of the governing Policy provisions indicate that the increases to which Arya became eligible after his onset date would only apply to a new period of disability. In that Ayra is now considered permanently disabled since 1997, it is highly unlikely that he will ever recoup those increases as he will probably never start a new period of disability.

Arya filed an action against Provident in the Philadelphia Court of Common Pleas on June 29, 2015 which was removed to this Court on August 7, 2015 based on diversity of citizenship. The December 9, 2016 amended complaint asserts two counts against Provident: (1) breach of contract; and (2) common law bad faith. Currently, Arya claims that, in bad faith, Provident breached the Policy by: (1) taking away the two 5%

5

Update Increases; (2) failing to apply the 2% increase to the maximum COLA percentage that he requested; and (3) failing to compound his COLA benefits when his Adjusted Monthly Benefit for Total Disability was calculated each year.[3]

Provident raises two main arguments in its motion for summary judgment: (1) that Arya's claims are barred by the applicable statutes of limitations; and (2) that Arya's claims have no merit in light of the clear language of the Policy. The Court held oral argument on September 5, 2018.

**II.   LEGAL STANDARD**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v.

---

[3] In his amended complaint Arya also alleges that there was an unconscionable "cap" on his Adjusted Monthly Benefit for Total Disability and that Provident improperly applied an "elimination period" to his COLA benefits. Arya does not counter Provident's arguments regarding these contentions in his summary judgment response and claimed during oral argument that he was not pursuing the additional claims. As a result, Provident is entitled to summary judgment on these two grounds and the Court will not discuss them further.

Below, the Court will discuss Arya's first two remaining claims together before separately addressing the third claim.

Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. and N.J., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

**III. DISCUSSION**

    **A.   Choice of Law**

Provident argues that Delaware law should apply to the claims while Arya asserts that the law of Ontario, Canada controls. Provident bases its argument on the facts that Arya lived in Delaware when Provident determined he had been suffering from one continuous period of disability and that he

7

received almost all of his benefits in Delaware. Arya's position is primarily premised on the fact that, when he applied for and purchased the Policy in 1994, he was a resident of Ontario.

However, a choice of law analysis is only necessary if the laws of the relevant jurisdictions differ. Hammersmith v. TIG Ins. Co., 480 F.3d 220, 230 (3d Cir. 2007). If the "laws are the same, then there is no conflict at all, and a choice of law analysis is unnecessary." Id. This "first part of the choice of law inquiry is best understood as determining if there is an actual or real conflict between the potentially applicable laws." Id. "If there is no conflict, then the district court sitting in diversity may refer interchangeably to the laws of the states whose laws potentially apply." Huber v. Taylor, 469 F.3d 67, 74 (3d Cir. 2006). As discussed immediately below, the determinative issue in the case is whether Provident breached the Policy. In that the application of either Delaware or Ontario law leads to the same result, as they are based on the same legal tenets, there is no true conflict in this case and the Court will rely on the law of both jurisdictions.[4]

---

[4] Indeed, the only potential conflict raised by the parties is that, regarding the bad faith claim, attorney's fees would be recoverable in Ontario but not in Delaware. In that the Court concludes that Provident did not breach the Policy, Arya's bad faith claim must also fail and the issue of attorney's fees becomes irrelevant.

8

## B. The Merits of Arya's Contract Claims[5]

All three of Arya's remaining contentions rest on the plain language of the Policy. "The proper construction of any contract, including an insurance contract, is purely a question of law." Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co., 616 A.2d 1192, 1195 (Del. 1992). Moreover,"[c]lear and unambiguous language in an insurance policy should be given its ordinary and usual meaning. Absent some ambiguity, Delaware courts will not destroy or twist policy language under the guise of construing it." Id. (internal citations omitted); see also Progressive Homes Ltd. v. Lombard Gen Ins. Co. of Can., [2010] 2 S.C.R. 245, 256-57 (Can.) (providing that "when the language of the policy is unambiguous, the court should give effect to clear language" but that if the language is ambiguous, "the courts rely on general rules of contract construction" including that "courts should prefer interpretations that are consistent with the reasonable expectations of the parties"). When an ambiguity does exists, a court must construe the insurance contract "against the insurance company that drafted it." Id. at 1196. "[A] contract is ambiguous only when the provisions in

---

[5] Provident argues at length that Arya's claims are barred by the applicable statute of limitations. Because Arya's claims fail on the merits, the Court will not address these arguments and will assume, for the purposes of this opinion only, that at least some of Arya's claims fall within the limitations period.

9

controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." Id. "The true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." Id.

> **1. Arya's entitlement to the 5% Update Increases and 2% Maximum COLA Percentage Increase**

Regarding Arya's first two arguments, the Policy clearly provides that both the 5% Update Increases and any increases to the maximum COLA percentage apply only to periods of disability that begin after the effective date of the increases. Mot. Ex. 1 at 8 & 17, ECF No. 46-2. "It must qualify as a separate Period of Disability." Id. Arya does not dispute that his eligibility for the two Update Increases and his 2000 request for the maximum COLA percentage increase occurred after 1997, which he requested be the start of his one continuous period of disability.

Instead, Arya contends that while he was retroactively paid for one continuous claim going back to 1997, he did not waive his rights to the increases that accrued between 1997 and 2006 during the periods of time when he originally had been found not to be disabled. Arya essentially contends that once his rights to the various updates accrued, Provident could not take them away, even though he sought and received a declaration

that, instead of being periodically disabled through 2006, he was under a single period of disability starting in 1997. Arya seeks retroactive effect when it benefits him but does not want to accept any changes that negatively affect his benefits. However, when the parties agreed to a new disability onset date under the Policy, changes were necessarily made to the benefit amounts to conform them to what he was entitled. Arya is now considered to have been under one continuous period of disability since 1997. As a result, by the clear and unambiguous terms of the Policy, he is not entitled to any increases that occurred after that date as they would only affect a separate period of disability.

Therefore, Provident did not breach the Policy by removing the two Update Increases or by refusing to apply the maximum COLA percentage increase after it changed Arya's disability onset date per his request.

### 2. Compounding COLA

Regarding Arya's third argument, Arya contends that he had a reasonable expectation that his COLA benefits would be compounded under the Policy, even though there is no language in the Policy supporting that proposition. He argues that his expectation was based on: (1) the assertion that he was told by the selling agent in 1994 that his COLA benefits would be compounded each year; and (2) his understanding of how the CPI-U

11

is used to calculate COLA benefits. Provident contends that in light of the clear Policy language, Arya's subjective belief is immaterial. Moreover, it argues that a belief based on a misunderstanding of the CPI-U and an unsupported hearsay statement allegedly uttered twenty years before the suit is not a "reasonable" belief.

Regardless of Arya's expectation, the Policy language is not ambiguous and clearly indicates that his COLA benefits are not compounded. Both the Supreme Courts of Delaware and Canada have confirmed that a reasonable expectation analysis is only performed when the court determines that the provisions at issue are ambiguous. See, e.g., Stoms v. Federated Serv. Ins. Co., 125 A.3d 1102, 1108 (Del. 2015) (providing that the reasonable expectation "doctrine applies only after a determination that an insurance contract is ambiguous"); Progressive Homes Ltd., 2 S.C.R. at 257 ("These rules of construction [including the parties' reasonable expectations] are applied to resolve ambiguity. They do not operate to create ambiguity where there is none in the first place.").

The Policy provides that the "Adjusted Monthly Benefit for Total Disability," which includes Arya's COLA, is determined by multiplying the "Monthly Benefit for Total Disability" by the "Benefit Factor." The Monthly Benefit for Total Disability is a fixed number listed on page three of the Policy. The Benefit

Factor is determined by dividing the CPI-U for the latest Index Month by the CPI-U applicable in the first Index Month. Mot. Ex. 1 at 15, ECF No. 46-2. On its face, this fairly simple calculation does not include factoring in previous COLA awards. In order for Arya to be entitled to compounded COLA benefits, the Policy would have to provide that the Adjusted Monthly Benefit for Total Disability is calculated by multiplying the previous year's Adjusted Monthly Benefit for Total Disability by the Benefit Factor. This is not what the Policy provides. Instead, Arya's Adjusted Monthly Benefit for Total Disability is largely dependent on a fixed number: the Monthly Benefit for Total Disability listed in the Policy.[6]

In light of the clear language of the Policy, Provident did not breach the contract by failing to compound Arya's COLA benefits.[7]

**IV. CONCLUSION**

For the reasons set forth above, the Court will grant Provident's motion for summary judgment, entering judgment in its favor and against Arya.

---

[6] Provident indicates that it does market another policy rider which provides for the compounding of COLA benefits, but it is issued on a different form and requires the payment of higher premiums.

[7] In that Provident did not breach the Policy, it cannot be liable for bad faith based on the alleged breach thereof.

An appropriate order follows.